AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

FILED

2014 JUN 17 AM 10: 13

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| RAHATUL ASHIKIM KHAN, a/k/a, "Rahat Khan," a/k/a, "AuthethicTauheed19," a/k/a, "AT19" | ) ) ) ) |
| _____ | ) |
| *Defendant(s)* | |

Case No. A-14-M-285

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     March 1, 2011 - January 2011     in the county of          Travis          in the

      Western       District of        Texas        , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Section 2339A | Conspiring to Provide Material Support to Terrorists |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jason Cromartie
*Printed name and title*

Sworn to before me and signed in my presence.

Date:      06/17/2014

_____
*Judge's signature*

City and state:            Austin, Texas            Honorable Mark Lane, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUN 17 AM 10: 12
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

UNITED STATES OF AMERICA

vs.

RAHATUL ASHIKIM KHAN, a/k/a, "Rahat Khan,"
a/k/a, "AutheticTauheed19," a/k/a, "AT19."
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

CRIMINAL NO._____

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND A SEARCH WARRANT FOR THE RESIDENCE LOCATED AT 4219 PEBBLESTONE TRAIL, ROUND ROCK, TEXAS

I, Jason Cromartie, Special Agent, Federal Bureau of Investigation, Austin, Texas, being duly sworn, depose and state the following:

1.    I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for nine years.  I previously served approximately five years as a Police Officer, during which time I was assigned to the Patrol and the Special Enforcement Team which included conducting street level narcotics and prostitution related investigations.  I am currently assigned to the San Antonio Division, Austin Resident Agency, working with the Central Texas Joint Terrorism Task Force (CTXJTTF).  During my assignment with the CTXJTTF, for the past approximately seven years, I have been assigned to counter terrorism investigations in the Western District of Texas and elsewhere.  In preparation for this assignment, and as part of my continuing education, I have successfully completed a wide array of national security-focused training, to include formal courses, seminars, conferences and training exercises.  I have also

1

read and/or studied numerous publications related to historical and current terrorism topics authored by, analysts, investigators, and, in some cases, actual members or supporters of designated Foreign Terrorist Organizations. I have participated in all aspects of counter terrorism investigations, including but not limited to conducting surveillance, telephone and email analysis obtained as a result of subpoenas, subject interviews, witness interviews, and operations of confidential informants and undercover employees. I have also spent over eighteen months collectively at the FBI Headquarters Counterterrorism Division where I most recently supervised intelligence collection and processing of international terrorism threats. Among other duties, I am currently involved in the investigation of Rahatul Ashikim Khan, a/k/a "Rahat," a/k/a "AuthenticTauheed19," a/k/a "AT19," within the Western District of Texas, Austin Division and elsewhere.

2. I respectfully submit this affidavit in support of a criminal complaint and arrest warrant for Rahatul Ashikim Khan, a/k/a, "Rahat," a/k/a "AuthenticTauheed19," a/k/a "AT19" (hereinafter referred to as Khan) and a search warrant for his residence, located at 4219 Pebblestone Trail, Round Rock, Texas, within the Western District of Texas. I believe that there is probable cause to believe that Khan has committed the offense of Conspiring to Provide Material Support to Terrorists, knowing or intending that such material support is to be used in preparation for, or in carrying out, a violation of Title 18, United States Code, Section 956(a)(1) (Conspiracy to Murder or Maim Persons Outside the United States), all in violation of 18 U.S.C. Section 2339A. This charge stems from Khan's conspiracy with others, known and unknown, to spot, assess, and recruit an individual who, unknown to Khan, was an FBI Confidential Human Source (CHS) for the purpose of traveling overseas to wage violent jihad and to murder or maim persons outside the United States. I further believe that there is probable cause to believe that there exist evidence and instrumentalities of this offense within Khan's residence, located in the

2

Western District of Texas, 4219 Pebblestone Trail, Round Rock, Texas – a single family, two story, brick residence.

3.   I have participated in the investigation of the offense listed herein.  As a result of my personal participation in this investigation, as well as interviews with and analysis of reports submitted by Special Agents (SAs), Task Force Officers (TFOs) of the FBI, and local and county police officers and deputies, I am familiar with the relevant aspects of this investigation.  On the basis of this familiarity, and on the basis of other information, which I have reviewed and determined to be reliable, as will be detailed more fully below, I believe there is probable cause to believe that Khan committed the offense described herein.   I have not set out every fact known to me herein.  Instead, this affidavit sets forth only the facts that are believed to establish the necessary probable cause for the arrest warrant and search warrant requested.  When I relate the substance of communications, I do so in summary form based on a review of consensual recordings, reports, and in some cases preliminary transcripts.

## THE DEFENDANT

4.   Rahatul Ashikim Khan, a/k/a "Rahat," a/k/a "AuthenticTauheed19," a/k/a  "AT19" (Khan) is a United States citizen born in Chittagong, Bangladesh.  Khan became a United States citizen in or about 2002.  He resides at 4219 Pebblestone Trail, Round Rock, Texas with his father, mother, and older brother.  Khan is a full time college student attending the University of Texas at Austin, presently believed to be on Summer Recess.

## SUMMARY

5.    The conspiracy began in early 2011 and continued until at least in or about January of 2012. In early 2011, Khan began communicating with a Confidential Human Source (Hereafter referred to as CHS) in an internet-based chat room. The CHS recorded most of the conversations and communications with Khan and others (some of which are described below). I have reviewed these recordings and have related the sum and substance of some of these recordings herein. I believe that Khan used the internet-based chat room as a platform to spot and assess potential recruits for committing violent jihad overseas.

6.    Approximately two months after Khan first began communicating with the CHS online, Khan informed the CHS that something had come up "big time." Khan stated that the CHS would be contacted by another individual, later identified as Unindicted Co-Conspirator#1 (Co-Conspirator#1). Co-Conspirator#1 is currently located in and charged in the Southern District of Florida with conspiring and attempting to provide material support to Foreign Terrorist Organizations in violation of Title 18 USC § 2339B (among other offenses). Khan stated that Co-Conspirator#1 was looking for people that Khan trusted. In early June 2011, after Khan facilitated the introduction of the CHS to Co-Conspirator #1, the CHS began frequent online communications with Co-Conspirator#1. As described in more detail below, Co-Conspirator#1 recruited the CHS to travel overseas for the purpose of engaging in violent jihad in Somalia. Co-Conspirator#1 stated that he trusted the CHS because of Khan's witness.

7.    In or about July 2011, Co-Conspirator#1 introduced the CHS to another individual online, later identified as Unindicted Co-Conspirator#2 (Co-Conspirator#2). Co-Conspirator#2 is also currently charged in the Southern District of Florida with conspiring and attempting to provide material support to Foreign Terrorist Organizations in violation of Title 18 USC § 2339B

(among other offenses). During several online communications with the CHS, Co-Conspirator#2

discussed the status of the CHS's passport and possible routes to move the CHS into Somalia to

join al-Shabaab, an Al-Qaeda-affiliated, designated Foreign Terrorist Organization. Co-

Conspirator#2 also discussed training the CHS would receive, asked about the willingness of the

CHS to kill civilians, and also discussed the possibility of the CHS operating within the United

States.

## THE STATUTE

8.    Title 18 U.S.C. Section 2339A - Providing material support to terrorists, provides

in pertinent part:

> (a) Offense. – Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of...956...shall be fined under this title, imprisoned not more than 15 years, or both, and if the death of any person results, shall be imprisoned for any term of years or for life.

> Title 18 U.S.C. Section 956 provides, in pertinent part:

> (a)(l) Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

> Title 18, U.S.C, Section 2339A(b)(1) provides in pertinent part:

> The term "material support" or resources means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

9.     On or about March 1, 2011, Rahatul Khan (Khan), communicated with an FBI Confidential Human Source (CHS) within the internet-based chat room, "Authentic Tauheed" (AT). This chat room features lectures from Sheikh Abdullah Ibrahim Al-Faisal (Faisal) who was deported to Jamaica in 2007 after serving four years of a seven year prison sentence in the United Kingdom for soliciting the murder of Jews, Hindus, and Christians and using threatening words to stir up hatred and violence. The CHS communicated with an individual in the chat room who used the online monikers, "RahatulKhan" and "AT19," also later identified as "AuthenticTauheed19." I have reviewed records showing Khan utilized those monikers during this period of time. Khan provided his email address, rahatulkhan@gmail.com, to the CHS.

10.     In or about March through May of 2011, Khan discussed guns, training, the war against Islam, his preparation for the Third World War, shooting, and getting the youth interested in the knowledge of jihad (inner struggle/holy war) – something that Khan stated had caused conflict with this parents, because he had been snitched on by some kids. Khan referred to himself as a "jihadi." My review of these communications reveals that Khan believed that he and the CHS shared an interest in violent jihad.

11.     On or about May 26, 2011, Khan asked the CHS if the CHS had been contacted by AT1, later identified as another chat room administrator (Co-Conspirator #1). Khan told the CHS something had come up big time, "the future," and Co-Conspirator#1 would contact the CHS. Khan stated he really trusted Co-Conspirator#1 and that Co-Conspirator#1 was looking for "ppl" (likely people) that Khan trusted. Khan urged the CHS to hear Co-Conspirator#1 and see what he had to say.

12.    On or about May 27, 2011, the CHS informed Khan that he/she had not been contacted by Co-Conspirator#1. Khan told the CHS not to worry and added "we do it pretty secretly." Khan instructed the CHS not to mention "it" to any other person.

13.    On or about June 3, 2011, the CHS and Co-Conspirator#1 engaged in an online conversation utilizing an elaborate communication method designed to ensure operational security. Co-Conspirator#1 explained that he communicated using this method because it was more secure and the "kuffar" (infidels/disbelievers) will not be able to read it. Co-Conspirator#1 asked where the CHS was born and how long the CHS had known AuthenticTauheed19 (a moniker known to be utilized by Khan). Co-Conspirator#1 asked the CHS if the CHS wanted to join the "brothers" (Based on the previous conversations and other evidence I have reviewed, I believe "brothers" to be a reference to individuals engaged in violent jihad.) The CHS replied he/she did, but it would be difficult because the CHS lived in the United States. Co-Conspirator#1 told the CHS not to worry because they had their ways. Co-Conspirator#1 then told the CHS that he would keep in touch and provide more details in the future. Co-Conspirator#1 concluded the conversation by stating he knew the brothers who were very trustworthy and have helped a lot of brothers in this – the brothers in Kenya.

14.    On or about June 3, 2011, the CHS mentioned to Khan that the CHS had been in contact with AT1 (Co-Conspirator#1). Khan told the CHS that if the CHS knew of others to recommend, the CHS should let Khan and Co-Conspirator#1 know. Khan stated he told AT1 (Co-Conspirator#1) that the CHS was on a "high level." I believe that Khan was assuring the CHS that he had relayed the CHS's desire and commitment to engage in violent jihad to Co-Conspirator #1.

7

15.    On or about June 7, 2011, in an online communication, Co-Conspirator#1 told the CHS that AT19 stated that the CHS was interested in "hijrah". Co-Conspirator#1 told the CHS that he had a contact, who he personally met, and described as being honest and not a spy, from Kenya. Co-Conspirator#1 stated nothing is secure, the whole world is our enemy, but the brother will do the best to keep it secure. Co-Conspirator#1 stated that he was only staying here right now because he was directed by the contact to remain in his current location since it would put Co-Conspirator#1 in a better position to aid those who wished to join "the brothers." Co-Conspirator#1 tasked the CHS to acquire travel documents and to keep Co-Conspirator#1 updated as to the CHS's progress. Co-Conspirator#1 stated he trusted the CHS because of AT19's (Khan) witness. Co-Conspirator#1 stated he was doing this for the sake of Allah adding he hoped Allah would keep them safe from the enemies and spies, and added, may Allah destroy them. Based on the nature of this conversation and other evidence I have reviewed, I believe "enemies and spies" was in reference to law enforcement, intelligence officials, and human informants.

16.    On or about June 12, 2011, in an online communication, the CHS told Khan that the CHS was talking to some brothers who are "down" but the CHS was still feeling them out. Khan stated he hoped that they were "down." The CHS stated he/she was taking his/her time to decide. Khan stated there was plenty of time. The CHS said he/she was in no rush. Based on Khan's previous instruction to the CHS regarding the CHS's knowledge of others to recommend, I believe Khan's use of the word "down" here is a reference to an interest in engaging in violent jihad.

17.    On or about June 13, 2011, in an online conversation with Khan, the CHS stated that he/she could not wait to be on the "grnd" (I believe to mean on the "ground" waging violent

8

jihad). Khan asked if it was setup yet. Khan also asked if the CHS was still feeling the brothers

out. Based on the aforementioned conversation, I believe Khan was referring to the additional

brothers the CHS was him/herself assessing for jihad and who were mentioned as possibly being

"down". On or about June 21, 2011, the CHS told Khan that the CHS had to let one of the

individuals go because he was weak. Khan said that his brain "starts bleeding" when he sees

weak "Bengalis" who have "no love for jihad" and "no love to shed blood." Khan said that if he

was the CHS's age and had what the CHS had, he would leave "asap." I believe this was in

reference to the traveling overseas to engage in violent jihad.

18.     On or about June 30, 2011, in an online communication utilizing the

aforementioned elaborate communication method to ensure operational security, Co-

Conspirator#1 provided the CHS with an email address known to be utilized by an individual

identified as Unindicted Co-Conspirator#2 (Co-Conspirator#2). Co-Conspirator#1 told the CHS

to start the email with a codeword (I believe this is further evidence of operational security). Co-

Conspirator#1 stated Co-Conspirator#2 was a very trustworthy brother, but he is careful in the

beginning. Co-Conspirator#1 stated Co-Conspirator#2 was a contact for "brothers" from the UK

going to Somalia.

19.     Beginning on or about July 20, 2011, the CHS held numerous online

communications with Co-Conspirator#2 using the same elaborate communication method as

mentioned above. During these communications, Co-Conspirator#2 inquired about the status of

the CHS's passport, among other things.

20.     On or about August 18, 2011, the CHS told Co-Conspirator#2 that the CHS's

passport was coming and asked if the CHS would go straight to Somalia. Co-Conspirator#2

explained they have connections in Mogadishu and due to the fact that the CHS was a Somali,

9

the "Murtadeen" (apostates/individuals who have left Islam) would not suspect the CHS. Co-Conspirator#2 stated he would contact the "brothers" there to make sure they knew that the CHS was coming. Co-Conspirator#2 stated they have brothers from the UK that would guide the CHS. However, Co-Conspirator#2 stated the CHS would not have to go to the UK, since the brothers are already in the field in "Mog" (I believe "Mog" is a reference to the city of Mogadishu in Somalia, and the term "field" referred to the battlefield in Somalia). Co-Conspirator#2 stated he would talk to his brothers and figure out the best route for the CHS. Co-Conspirator#2 asked if the CHS had a birth certificate that showed the CHS was Somali. Co-Conspirator#2 told the CHS not to worry, since Co-Conspirator#2 had been working with this group for a long time. Co-Conspirator#2 advised the CHS that the CHS would first have to attend training. Co-Conspirator#2 stated that the "land" (I believe to mean Somalia) is full of opportunities to harm the kuffar (infidels/disbelievers). Co-Conspirator#2 also called the kuffar (infidels/disbelievers) the biggest "snake" that "kills us." Co-Conspirator#2 told the CHS that once the CHS was in their ranks, the CHS would see how precious it is to kill those people.

21.    On or about September 22 and 23, 2011, during a face to face, unrecorded meeting with the CHS in Austin, Texas, Khan said that he was interested in participating in jihad in the future and that he could not wait to spill blood. Khan said that he was actively searching for recruits for Co-Conspirator#1 and he was the only person he knew of doing this. Khan talked about an individual in the U.K. who Khan had passed to Co-Conspirator#1. Khan mentioned he tried to recruit people locally, but his parents were notified and he got into trouble. Khan asked where the CHS was planning on going to fight jihad and the CHS stated he/she was going to fight with al-Shabaab. Khan said he, too, wanted to fight with al-Shabaab. Khan asked the CHS if he/she knew of others who might be good potential recruits.

22.    In late May 2013, the CHS traveled to Austin, Texas and introduced Khan to another FBI Confidential Human Source (hereafter referred to as CHS#2). CHS#2 conducted numerous face to face meetings with Khan, most of which were recorded. On or about June 1, 2013, Khan told CHS #2, in sum and substance, that he had met the CHS in an online chat room. Khan stated it was his (Khan's) job to recruit people and added, "I recruited him (the CHS) and he went overseas he did some stuff and came back he's in it big time." Khan went on to tell CHS#2 that the CHS got introduced to a whole bunch of people all over the world and "it's like very deep." (I believe "big time" and "very deep" are in reference to Khan's knowledge and belief with respect to the CHS' involvement in violent jihad and the CHS' association with Co-Conspirator #1 and Co-Conspirator #2, and others).

23.    In late August of 2013, the CHS again traveled to Austin, Texas and met with Khan to discuss, among other things, the arrests of Co-Conspirator #1 and Co-Conspirator #2. During that recorded meeting, Khan and the CHS discussed what they would say if approached by law enforcement authorities.

24.    Based on the above, I submit that there is probable cause to believe that Rahatul Ashikim Khan, a/k/a, "Rahat," a/k/a "AuthenticTauheed19," a/k/a "AT19" has committed the offense of Conspiring to Provide Material Support to Terrorists, knowing or intending that such material support is to be used in preparation for, or in carrying out, a violation of Title 18, United States Code, Section 956(a)(1) (Conspiracy to Murder or Maim Persons Outside the United States), all in violation of 18 U.S.C. Section 2339A.

25.    I further submit that there is probable cause to believe that there exists evidence and instrumentalities of the above described offense inside the residence of Khan. FBI physical surveillance has observed Khan at his residence, located at 4219 Pebblestone Trail, Round Rock,

11

Texas as recently as June 13, 2014.   Based on FBI physical surveillance and open source information which I have reviewed, Khan is believed to reside at this residence since approximately October 2012.  Khan's previous residence, 2501 Avenue N, Austin, Texas, also confirmed by FBI physical surveillance and open source information, was the location wherein Khan resided from at least the spring of 2011 until approximately October 2012.

26.    As described above, Khan lives with his parents and older brother at the target residence. *I am only seeking authority to search Khan's room as well as any other area in the home where he has stored or keeps items which could contain the evidence described herein, to include any common areas inside or on the real property of the residence.*

27.    I know, from my training and experience, that individuals who engage in providing material support of terrorists utilize emails, texts, and other electronic communications that are often stored for long periods of time on their electronic devices (including cellular telephones), as well as in address books, and other storage devices, electronic and otherwise, to include CDs, DVDs.  I also know that even if an individual attempts to erase or delete files, data and information from these electronic devices, it is sometimes possible to retrieve some or all of this data, information and communication.  I have described this in more detail below.  I also know from my training and experience that individuals who engage in providing material support to terrorists often retain files, papers, manuals, training materials, documents, photographs, videos, radical propaganda (that promotes violent jihad and describes areas where such activity is occurring) and other items that evidence their commitment, motivation, predisposition and knowledge with respect to the commission of such an offense.

27.    I am informed by other FBI Special Agents that they were informed by the CHS that  within the last thirty days, Khan again reached out to the CHS to invite the CHS to come to

12

Austin, Texas for a visit.

28.    Therefore, I submit that there is probable cause to believe that evidence of Khan's association with Co-Conspirator #1, the CHS and/or CHS #2, as well as others, known and unknown, will be contained within the target location on or in some of Khan's electronic media or storage devices, including but not limited to buddy lists, address books, printed documents, diaries, hand written notes, telephone records, billing records, among other data, documents, files and communications found in cellular telephones, CDs and DVDs.  Further, there is probable cause to believe that evidence of Khan's commitment, motivation, predisposition and knowledge with respect to the commission of the above-described offense is contained on these devices or in or on documents, ledgers, diaries, papers and notes, among other tangible items located within the target location.

<u>TECHNICAL TERMS</u>

29.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   b.  Storage medium: A storage medium is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

30.     As described above and in Attachment B, this application seeks permission to search for data, records and items that might be found inside the target location, specifically, Khan's room as well as any other area in the home where he has stored or keeps items which could contain the evidence described herein, to include any common areas inside or on the real property of the residence.  One form in which these records, items and data might be found is data stored on cellular telephones, tablets, CDs and DVDs.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

31.     I submit that if a storage medium is found inside the target residence as described herein, there is probable cause to believe those records will be stored on that storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being

14

used by an active file—for long periods of time before they are overwritten. In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

32.    In most cases, a thorough search of a premise for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.    The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a device has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

15

      b.    <u>Variety of forms of electronic media.</u>  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

    33.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

<u>CONCLUSION</u>

Based on the above, I submit there is probable cause to believe that Khan has conspired to provide material support and resources to terrorists, including but not limited to personnel, including himself, knowing or intending that they be used in preparation for, or in carrying out, a crime of terrorism, including conspiracy to kill, kidnap, maim, or injure persons and damage property in a foreign country in violation of Title 18, United States Code, Section 956(a)(1), in violation of 18 U.S.C. Section 2339A. I further submit that this affidavit establishes probable cause to believe that the target residence, as further described in Attachment A, will contain evidence and/or instrumentalities of the violation of the statute described above.

Dated: June 17, 2014

Special Agent Jason Cromartie
Federal Bureau of Investigation

Sworn to before me this 17th day of June, 2014.

Honorable Mark Lane
United States Magistrate Judge

17

## **ATTACHMENT A**
### *Property to be searched*

The property to be searched is listed as:

A residence located at 4219 Pebblestone Trail, Round Rock, Texas – a single family, two story, brick home.

The search will be limited to:

Khan's room as well as any other area in the home where Khan has stored or keeps items which could contain the evidence described herein, to include any common areas inside the residence or upon the real property of the residence.

18

## ATTACHMENT B
### *Property to be seized*

All records, files, data, items, information, notes, and communications relating to violations of Title 18, United States Code, Section 2339A, including:

a.   Information, files (electronic or otherwise, to including but not limited to audio and video files), items, data, records, notes and communications relating to Khan's participation, commission, identity, planning, preparation, motive, intent, role or predisposition to commit the offense described above, including but not limited to:

    i.   Communication regarding or information related to Somalia, Kenya, al Shabaab, al Qaeda, jihad, martyrdom, hijrah, kuffar, radical Islam;

    ii.   Communications regarding or information related to the physical location of Khan or his associates;

    iii.   Communications regarding or information related to the travel plans of Khan or his associates; and

    iv.   Communications regarding or information related to operational security, and other means of communication used by Khan or his associates.

b.   Information, files (electronic or otherwise, including but not limited to audio and video files), items, data, records, notes and communications relating to the participation in or conspiracy to participate in the commission of the above described offense by others, known and unknown at this time, to include participation by aiders and abettors, facilitators, accomplices or criminal associates.

19

c.   Any and all instrumentalities utilized in the commission of, preparation for, or planning of the offense described above, including cellular telephones, tablets, CDs or DVDs.